Vastine STEPHENS Individually and
d/b/a Audio Works, Appellant,

v.

ANGELINA NATIONAL BANK,
LUFKIN, Appellee.

No. 09–88–179 CV.

Court of Appeals of Texas,
Beaumont.

June 1, 1989.

Motion for Rehearing Overruled
June 21, 1989.

Stephen J. Zayler, Lufkin, for appellant.

Wayne D. Haglund, John P. Baum, Lufkin, for appellee.

## OPINION

BROOKSHIRE, Justice.

Appeal resulting from a suit on three promissory notes held and owned by the

bank. The trial was to the Bench. The bank alleged that Mr. Vastine Stephens individually and d/b/a Audio Works, was a general partner. The bank took the position that Mr. Vastine Stephens was a general partner with his son, Coy Stephens, also a partner. The notes were signed by Coy Stephens as the other partner.

Before the State court proceedings, Coy Stephens had filed for protection under the bankruptcy laws. A stipulation was entered into at the beginning of the trial. In part, the stipulation stated that the notes were signed by the other partner, the debts were incurred, and the money evidenced by the notes was advanced to the partnership and that liability exists for the payment of the notes as against the partnership.

The basic issue, outside the stipulation but in relationship to the stipulation, was whether or not Vastine Stephens was a partner. A further stipulation existed as to the notes themselves, the amounts due, the interest due, the dates of the notes and the identifying numbers on the notes.

The executive vice-president of the bank testified that he was familiar with and involved in the bank's handling of the loan to Coy and/or Vastine Stephens doing business as Audio Works. This banker was also responsible for maintaining, supervising and keeping the records of the bank. He was the custodian of these records. He testified that the notes were secured by certain collateral, being inventory, furniture, fixtures, and equipment of the partnership, Audio Works. The executive vice-president further testified from the bank's records concerning a document which was a partnership agreement.

Both Coy and Vastine had signed the partnership agreement. There was also a signature card for the partnership, Audio Works, on which both Mr. Vastine Stephens and Mr. Coy Stephens were signatories. There was a partnership certificate that authorized borrowing by the partnership (Audio Works) from the bank signed by Coy Stephens and Vastine L. Stephens doing business as Audio Works. *The agreement and documents, including the signature cards, were admitted into evidence without objection.* There was a signature card known as a commercial signature card on a commercial account entitled Audio Works. This commercial signature card was signed by Coy Stephens and Vastine Stephens.

A personal financial statement of Vastine Stephens dated May 31, 1983, was introduced into evidence without objection. *The bank had come into the possession of the personal financial statement of Vastine Stephens because the bank had requested of Vastine proof of his financial worth. His financial statement was obtained in connection with the general course of business in conjunction with the bank's transactions and loans to Audio Works.*

The banker testified that Vastine Stephens had no other indebtednesses or obligations to the bank other than the transactions of the bank with Audio Works. Evidence, testimony and documents were admitted before the trial judge to the effect that the partnership certificate was still fully in force and effect as to the bank's loans to the partnership.

The record reflects convincingly and compellingly that the loans involved, or the extensions thereof, would simply not have been made to Coy Stephens alone based on Coy's individual financial strength. The bank had definitely looked to and was definitely looking to Mr. Vastine Stephens for the financial strength and liquidity of Vastine's assets in granting of the credit and loans to the partnership. The bank clearly relied on Vastine's financial strength and liquidity in extending the loans. The record reflects that Vastine had very good assets and very low liabilities, his assets being liquid. Liquid assets meant that the same could be converted to cash easily and could be used to pay off the debts and the notes in case of need or default. We decide that there was ample, sufficient evidence and verbal testimony of strong probative force that Vastine was a general partner in the business known as Audio Works.

The inventory of Audio Works was basically automobile stereo parts of various

kinds: speakers, stereos, amplifiers, instruments, adapters, bracers, soundboards and related parts. This changing inventory was the primary physical collateral for the notes. Additionally, there were some desks, chairs, furniture and fixtures in the Audio Works' place of business.

After a Christmas season and sale, at sometime early in the following January, the business of Audio Works was closed. The bank found out about this fact from a telephone call from a near-by owner. The bank then tried to contact Coy several times without success. Finally, Coy was contacted and Coy told the bank that he had closed the business and would not re-open the same. Vastine declined to cooperate with the bank. Later, after some difficulty and necessary delay, the bank was able to get into the place of business of Audio Works and take an inventory of the collateral. This inventory took place probably in early or middle February of 1985.

Later, the collateral was transported by the bank to a warehouse in downtown Lufkin for safe-keeping. At this point in time, several individual merchants were contacted and several attempts were made to obtain bids on the collateral and to dispose of the collateral by means of an early private sale. There exists some cogent evidence in the record that the bank was prevented from being able to sell the collateral at a private sale because of the intervening bankruptcy. Subsequently, the trustee in bankruptcy for Coy Stephens took possession of the collateral. This possession of the collateral was taken directly from the Angelina National Bank, Lufkin, by the bankruptcy trustee.

The bank received a formal notice of the bankruptcy proceeding which was dated April 5, 1985. The notice of the bankruptcy contained a provision generally known as an automatic stay order. This automatic stay order required the bank to desist from proceeding any further with the sale or disposition of the collateral.

There was some evidence that an undated document existed which purported to convey the 30% interest in Audio Works owned by Vastine Stephens to Coy Stephens. This undated document was, however, *notarized on January 7, 1985,* which was after the business closed its doors and ceased operation and shortly before the filing of the bankruptcy petition by Coy.

Also other compelling evidence exists to the effect that on the last renewal of the notes the bank would not renew the notes unless the bank had verification that Vastine was still a partner in Audio Works. The record reflects evidence of probative force that the bank would simply not have renewed the notes, unless the bank was satisfied that Vastine was responsibile for the said notes as well as Coy. As we understand the record, the partnership certificate came into being, was signed by Vastine, and was delivered to the bank before the notes were renewed.

After the bankruptcy notice was received containing the automatic stay order, the record reflects that the bankruptcy trustee wrote a letter to the bank *in the latter part of July of 1986 requesting that the inventory and assets of Audio Works be turned over to the bankruptcy court.* It is correct to state that some period of time over a year elapsed before the collateral involved was actually turned over to the bankruptcy trustee. There exists evidence that there was some considerable delay while the bankruptcy trustee was making arrangements to have the collateral and assets picked up and properly stored within his official possession and custody. Admittedly, there is an inconsistency in the evidence in that there was testimony that it was not until July of 1986 that the trustee notified the bank of his appointment as trustee. But this was a matter for the trial judge.

The principal defenses generally of the Appellant were the actions of the bank in taking possession of, preserving, and disposing of the collateral and assets of Audio Works. Appellant argues violations of the Uniform Commercial Code, arguing the bank's failure to dispose of the assets in a commercially reasonable or commercially acceptable manner. The bankruptcy trustee at auction sold the assets for $5,600. The notes totaled about $33,322.84.

The bank reasonably did not consider or believe that the value of the inventory collateral and assets were equal to the amount of the loans. The trustee's sale tended to affirm the bank's position. The bids obtained by the bank prior to bankruptcy were considerably less than the balance of the outstanding loans.

The trial court itself carefully and conscientiously asked piercing questions of the vice-president, Mr. T.P. "Mack" McCuistion. Mr. McCuistion responded that after the bank took possession of the assets, the bank obtained bids about thirty to forty-five days thereafter. When the court asked the banker why the bank did not go ahead and sell the assets, the reply was: the bank then received a letter stating that Coy had taken bankruptcy. At this point the court was requested to take judicial notice of the provisions of 11 U.S.C. sec. 362 (1979) of the Bankruptcy Code, providing for what is commonly known as an automatic stay or automatic stay order. The bankruptcy petition was filed in the latter part of March, 1985.

A second banker, also a vice-president with Angelina National Bank testified. The second banker, Mr. Jack McClain, was *the loan officer most directly involved with the Audio Works loans, and with the accounts of Audio Works.* McClain testified that he asked for and obtained the general partnership agreement existing between Vastine and Coy and that they were general partners in the partnership of Audio Works. This partnership agreement contained a partnership certificate authorizing borrowing by the partnership from the bank. The record reflects that this agreement and certificate of partnership were dated in October of '84 at the time when there were one or more notes that were pending for renewal. The record shows that *but for the existence of the document showing the participation of Vastine as a general partner in the partnership of Audio Works, the notes would have not been renewed.* McClain testified unequivocally that the bank relied upon the participation and liability of Vastine as partner, in the partnership in extending and renewing the loans. McClain reiterated that without the partnership agreement and certificate, the loans simply would not have been renewed.

### The Trustee Testimony

The trustee in bankruptcy was called by the defendant-appellant. Apparently the trustee talked to one of the bankers in June of 1985. The trustee was advised that the bank did not claim a lien on the office furniture or equipment but rather on the inventory. The trustee testified that it was on July 23, 1986, that his letter to the bank was picked up by someone connected with the bank. This letter inquired about the possession of the property and assets of Audio Works. On September 11, 1986, the trustee was contacted by the bank's attorney. The bankruptcy trustee testified that, after a creditor such as the bank received notice of the filing of a petition in bankruptcy and thereby receives a notice of an automatic stay, then the creditor bank would not be at liberty to dispose of the collateral in any way and further that the bank simply could not pass good title at a sale. The trustee further testified that, if the creditor such as the bank here proceeded to sell the assets, then the bankruptcy court would demand the money received by that creditor.

### Vastine Stephens' Testimony

Vastine testified in his own behalf. Vastine acknowledged signing a document which he identified as a "partnership certificate authorizing borrowing by the partnership" which was dated October 11, 1984. Vastine acknowledged that he had signed it at the importuning of Coy who advised Vastine that the partnership needed to renew certain notes at the bank. Moreover, Coy said that the bank needed it for the bank examiners. The bank also was insisting upon additional security. Vastine acknowledged and agreed that after the execution of this partnership document the bank did, in fact, renew and extend the several indebtednesses. Vastine, for a second time, acknowledged that he signed the partnership agreement and certificate voluntarily because he wanted to help his boy

out and enable Coy to obtain additional extensions of credit and more time on the loans. Also, certain tax records showed that Vastine was a general partner in Audio Works. Vastine acknowledged that he had never advised the bank that he was not a partner in Audio Works. It would serve no useful purpose to extend the length of the opinion by reciting all of Vastine's testimony, but on cross examination Vastine conceded that he assumed and thought that the bank believed that Vastine was a partner in Audio Works and the bank relied on this and that the bank had never been told anything to the contrary by Vastine.

### The Bank's Action

We think the trial judge's decision is sustainable in impliedly finding that the bank acted reasonably in view of the bankruptcy proceeding and automatic stay. Nor can we take exception with the time that elapsed between the initiation of the bankruptcy proceeding and the final auction sale. There was some delay, no doubt, but secured creditors have, we think, a legitimate right and interest in protecting their collateral and in endeavoring to show to the bankruptcy trustee that their lien is a first, valid, subsisting and unsatisfied lien and that the collateral involved will not satisfy the underlying debt and lien. Therefore, the property should be abandoned by the trustee as having no value over and above the debt which could enure to the benefit of the general, unsecured creditors. Customarily and practically this takes some reasonable amount of time depending on the facts of the case. The record here justifies the trial bench's judgment. We perceive that parts of these delays were caused by the action of Coy and to an extent, the non-cooperation of Vastine.

Also, without criticism to anyone, we note that there is evidence that after collateral was taken into the possession of the bank in February of 1985, that there was no actual communication from the bankruptcy trustee until July the 24th of 1986, which was slightly less than 18 months later.

There is undisputed and uncontroverted expert evidence that the bank could not pass a good title to the collateral after the bankruptcy petition was filed in February of 1985. And yet, the bank did not receive an official communication or demand for a turnover of the property by the official bankruptcy trustee until July of 1986 or even later. We decline to find that the bank was unreasonable in its actions in regards to the collateral inventory, assets and properties of Audio Works. Evidence exists that it was not until the closing months of '86 or the beginning of '87 *that the trustee actually required the property to be delivered to him.* The trial judge's implied findings and decision are hereby upheld.

### Additional Testimony of Vastine Stephens

Vastine acknowledged that he realized that Coy would take the partnership certificate back to the bank after it was signed by Vastine and that Coy would actually return it to Angelina National Bank in order to renew the loans to Audio Works and Coy. After that time Vastine testified that he did not communicate with anybody at the bank to indicate that he, himself, was not involved in the business of Audio Works; Vastine simply had no communication at all with any of the employees of the bank. There existed in the record, of course, some conflict of evidence on this matter but we decide, as we must, that those conflicts and inconsistencies were to be resolved by the trier of facts.

### The Attorney Fee Issues

Testimony, lengthy and in detail, was given on the attorney's fee question; no cross examination occurred as to the reasonableness of the attorney's fees. The sum of approximately $5,700.00 was sworn to as reasonable, necessary and actual attorney's fees, based on $75.00 an hour. The trial bench reduced this figure.

### The Basis of the Trial Court's Judgment

No findings of fact or conclusions of law were filed; none were requested.

■ We perceive that the trial court below was correct in awarding a judgment for the bank against Vastine Stephens on several grounds: firstly, his partnership liability as a general partner under the partnership agreement and certificate; secondly, his partnership liability under the Uniform Partnership Act of Texas, *TEX. REV.CIV.STAT.ANN. art 6132b, sec. 16* (Vernon 1970), whereby Vastine was a partner by the doctrine of partner or partnership by estoppel.

■ We also perceive that the trial judge was correct and supported by substantial evidence of probative force that the bank used commercially reasonable means in its efforts to deal with the collateral in question. The record clearly reflects that the bank, within a reasonable time of learning of the bankruptcy, contacted the Lufkin attorney who represented Coy, but the bank could not obtain an agreement from him to work towards the release of the collateral to the bank for sale. There is, in addition, some evidence that the bank filed more than one motion or pleading for the bankruptcy court to abandon the collateralized property to the bank. These motions did not result in success. There was some period of time before the bank knew who the official bankruptcy trustee was; and, thereafter, a reasonable length of time expired negotiating with the trustee concerning the collateral property and the assets of Audio Works. We think the trial bench's implied conclusion that once bankruptcy ensued then *TEX.BUS. & COM. CODE ANN. sec. 9.504 (Tex.UCC)* (Vernon Supp.1989) was postponed and superceded by the supremacy of the federal bankruptcy law was a correct conclusion. Moreover, the bank could not have effectively passed a good merchantable title to the properties of the bankrupt in view of the automatic stay.

### The Inducements to the Bank

■ The partnership document recites and provides in substance as follows: that to induce the bank to make loans to and/or to extend credit to the partnership of Audio Works, and to transact any and all business with the said firm of Audio Works, and to act in reliance thereon, that Coy L. Stephens and Vastine Stephens hereby certify and agree individually and on behalf of the firm that Audio Works is a partnership and consists of the following general partners, Coy L. Stephens and Vastine Stephens, and that each general partner has full authority to represent, sign for, and bind the firm in the firm name in all respects. This written inducement and the bank's action and reliance thereon bring into play the doctrine of promissory estoppel.

### The Bankruptcy Code

*11 U.S.C. Sec. 362* (1979), entitled "Automatic Stay", in the Bankruptcy Code, provides, generally, that a petition in bankruptcy filed under certain sections of the Bankruptcy Code operates as a stay which is generally applicable to all entities. This automatic stay prohibits any act to perfect or enforce any lien against the property of a bankruptcy debtor in his possession. Furthermore, *11 U.S.C. Sec. 542*, (1979 and Supp.1989), provides, generally, that an entity in possession of property that the trustee in bankruptcy may use, sell or lease, shall deliver to the trustee such property or the value of such property, unless such property is of inconsequential value to the estate.

*11 U.S.C. Sec. 543* (Supp.1989) provides, generally, that a custodian with knowledge of the commencement of a bankruptcy proceeding may not make any disbursement from, or take action in the administration of, the property of the bankrupt except such action as is necessary to preserve such property. But the bankruptcy court may, after notice and hearing, permit an entity or custodian to continue in the custody and control of said property if the interest of the secured creditors would be better served, without detriment to the general, unsecured creditors.

■ Again, in this case, no findings of fact nor conclusions of law were filed. None were requested. This invokes a rule of law of wide acceptance and venerable standing. This ancient rule may be stated: When a jury is waived and the entire litigation submitted to the trial judge, his decisions and judgment are entitled to all of the presumptions in his favor that a verdict

of the jury should have. *Rich v. Ferguson*, 45 Tex. 396 (1876). This rule of law has current, vibrant vitality and effect.

Furthermore, it is presumed, on appeal, that the trial judge found every issuable fact and every legal proposition or grounds necessary to sustain the judgment. If any such fact issue or legal theory is raised by the pleadings, or outside of the formal pleadings by consent, and is supported by any evidence of probative value the intermediate appellate court must affirm the judgment if it can be sustained upon any reasonable theory supported by the evidence and authorized by law. *Davis v. Huey*, 571 S.W.2d 859 (Tex.1978); *Lassiter v. Bliss*, 559 S.W.2d 353 (Tex.1977); 4 R. McDONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS, sec. 16.10 (rev. 1984).

We perceive, under this record, evidence that, because of the intervening bankruptcy and dispute between the bankruptcy trustee and the lienholder, the bank, and because of the fact that the bank-lienholder could not pass and convey a good and merchantable title to the collateral, and because of the fact that the trustee, doing his duty, insisted that the collateral be administered through the bankruptcy court; that, therefore, there was no error in the trial judge's impliedly deciding that the bank, under all circumstances, used commercially reasonable methods of disposing of the collateral. Therefore, the trial judge was not in error in impliedly finding, by means of his judgment, that the bank had not violated either *TEX.BUS. & COM.CODE ANN. sec. 9.504(c) or sec. 9.207 (Tex.UCC)* (Vernon Supp.1989).

The District Judge with sincerity, expressed his discomfort and chagrin, in ruling against Appellant. He felt correctly that he was constrained to apply the fact and the law to a hard case. We identify with the trial jurist; we, under this record, are constrained to affirm his judgment.

AFFIRMED.